IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Gateway Gaming, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 8:06-01649-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Custom Game Design, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Custom Game Design, Inc.'s ("CGD") motion to dismiss for lack of personal jurisdiction; motion to dismiss for improper venue or, in the alternative, to transfer venue of the case to the United States District Court for the Eastern District of Texas; and motion to dismiss pursuant to <u>Colorado River Water Conservation Dist.</u> <u>v. United States</u>, 424 U.S. 800 (1976), or, in the alternative, to stay the proceedings. For the reasons stated below, the court denies CGD's motions.

## I. Factual and Procedural Background

CGD is a Texas corporation that designs and develops computer software applications for casino gaming systems. (Def.'s Mem. Supp. Mot. Dismiss Improper Venue ¶ 1.) Gateway Gaming, L.L.C. ("Gateway") is a South Carolina limited liability company. (Compl. ¶ 2.) Although the parties disagree over which entity initiated contact, Gateway and CDG began negotiations sometime before August 13, 2004, regarding CGD's game development services. (Id. ¶ 5.) As a result of these negotiations, CGD and Gateway entered into a written contract ("Agreement") on August 13, 2004, which provided for CGD to

1

develop a video gaming system ("gaming system") for a fee of Four Hundred Forty-seven

Thousand Dollars ($447,000.00).  (Id. Ex. A (Agreement 1, 7).)  The Agreement further

required CGD to complete and develop five (5) separate games ("games") for a total cost of

Four Hundred Eight Thousand Four Hundred Dollars ($408,400.00).  (Id. Ex. A (Agreement

1, 8).)  The Agreement stated that it was terminable if Gateway hired any current CGD

employee or any former CGD employee within one hundred eighty days (180) days of the

termination of the former employee's employment with CGD.  Furthermore, Gateway would

be required to pay CGD forty percent (40%) of the annual salary Gateway offered to the

former CGD employee.  (Id. Ex. A (Agreement ¶ 6).)  The gaming system and games were to

be developed by CGD in installments beginning in August 2004, and ending in May 2005.

(Compl. Ex. A (Agreement 6).)  Payments by Gateway were to be made in installments

dependent upon CGD's progress.  (Id. Ex. A (Agreement 7-8).)  In connection with its

development of the gaming system and games, CGD also agreed to "provide such technical

support, remote or on-site, as reasonably requested by [Gateway]."  (Id. Ex. A (Agreement

1).)  The Agreement contains a choice of law provision stating that it "shall be governed by

the Laws of the State of South Carolina."  (Id. Ex. A (Agreement 5).)

     CGD and Gateway disagree over how long the Agreement remained in effect.  CGD

maintains that on February 21, 2006, Gateway asked CGD to produce a sixth casino game

pursuant to a provision in the Agreement which contemplated future projects between the two

companies.  (Def.'s Mem. Supp. Mot. Dismiss Pursuant to Colorado River Ex. B (Pet. Tex.

action ¶ 13).)  According to CGD, the Agreement was in effect at least until May 11, 2006,

when Gateway allegedly attempted to terminate it.  (Id. Ex. B (Pet. Tex. action ¶ 46).)

Gateway, on the other hand, maintains that the Agreement terminated on December 31, 2005. (Compl. ¶ 22.)  It is clear, however, that both parties assert that the Agreement and the relationship between the two parties extended for months beyond May 2005, when CGD was supposed to have completed the gaming system and games.

On May 22, 2006, CGD filed suit against Gateway, Robert Weatherby ("Weatherby"), David Dempsey ("Dempsey"), and Keith Riskey ("Riskey") in the 192nd District Court for Dallas County, Texas ("Texas action").  (Def.'s Mem. Supp. Mot. Dismiss Pursuant to <u>Colorado River</u> Ex. B (Pet. Tex. action).)   In that suit, CGD alleges claims against Gateway for wrongful termination of the Agreement and wrongful solicitation and employment of CGD's former employees, Weatherby, Dempsey, and Riskey (collectively "Former Employees").  (<u>Id.</u> Ex. B (Pet. Tex. action ¶¶ 53-63).)  CGD also alleges that Gateway tortiously interfered with non-disclosure agreements between CGD and the Former Employees and conspired with them to steal trade secrets.  (<u>Id.</u> Ex. B (Pet. Tex. action ¶¶ 81-90).)  Finally, CGD asserts claims against the Former Employees for breach of contract, breach of fiduciary duty, theft of trade secrets, and civil conspiracy.  (<u>Id.</u> Ex. B (Pet. Tex. action ¶¶ 64-85).)

On May 31, 2006, Gateway filed the complaint in this action.  In its complaint, Gateway seeks a declaration that the Agreement terminated on December 31, 2005, and that Gateway is not liable to CGD for any alleged solicitation of CGD's former employees. (Compl. ¶ 22.)  Additionally, Gateway alleges a breach of contract claim.  (<u>Id.</u> ¶ 18.)

## II. Discussion of the Law

### A. Motion to Dismiss for Lack of Personal Jurisdiction

First, CGD moves to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). In the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In determining whether the plaintiff has made a prima facie showing, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes in the plaintiff's favor." Id.

### 1. General Jurisdiction

States may assert general jurisdiction over a defendant when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state. Plaintiff must prove that the defendant's contacts are "continuous and systematic" to support the exercise of general personal jurisdiction over the defendant. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984). In this case, Gateway makes no claims that CGD's contacts with South Carolina are continuous and systematic. Therefore, if jurisdiction exists, it is specific in nature and the court need not address general jurisdiction.

### 2. Specific Jurisdiction

In order for specific jurisdiction to exist, the controversy must "arise out of or relate to" the defendant's contacts with the forum state. Id. at 414. Despite CGD's argument to the

4

contrary, this action arises out of CGD's contacts with South Carolina pursuant to its relationship with Gateway. (Def.'s Mem. Supp. Mot. Dismiss Lack of Pers. Jur. ¶ 17.) Therefore, a specific jurisdiction inquiry is appropriate.

South Carolina asserts specific jurisdiction over defendants pursuant to its long-arm statute. See Sheppard v. Jacksonville Marine Supply, Inc., 877 F. Supp. 260, 264 (D.S.C. 1995). The South Carolina Supreme Court has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by the due process clause. Id. at 265. Therefore, it follows that the two-step analysis collapses into a due process analysis. Id. Under the due process analysis, the plaintiff must show that the defendant had sufficient "minimum contacts" with South Carolina and that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted).

### a. Minimum Contacts

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297. Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Further, the defendant's activities must create a "substantial connection" to the forum state and result in contacts that are not merely "random, fortuitous or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (internal quotation marks omitted).

5

CGD largely bases its motion to dismiss on the fact that none of its employees or agents have ever entered South Carolina. However, when a defendant, through its own actions, has created a substantial connection with the forum state, "jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State." Id. at 476. Further, it is not dispositive that CGD performed all of the work on the games and gaming system in Texas. CGD entered into the Agreement with a South Carolina company which resulted in a relationship between the two companies lasting well over a year. (Compl. ¶¶ 5, 22.) In fact, according to CGD, the two parties were conducting business for almost two years. (Def.'s Mot. Dismiss Pursuant to Colorado River Ex. B (Pet. Tex. Action ¶¶ 9, 48).) CGD was fully aware that Gateway was purchasing its products, the gaming system and games, for use in South Carolina. (Def.'s Mem. Supp. Mot. Dismiss Lack of Pers. Jur. ¶¶ 2-3.) Further, the Agreement required CGD to work closely with Gateway from August 2004 to May 2005 and to deliver into South Carolina various custom-made products for Gateway over the same time period. (Id. ¶¶ 2-4; Pl.'s Mem. Opp'n Mot. Dismiss Lack of Pers. Jur. 2-3.) The Agreement also obligated CGD to provide technical support in South Carolina. (Compl. Ex. A (Agreement ¶ 2).) In the context of interstate contracts, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp., 471 U.S. at 473 (quoting Travelers Health Ass'n v. Va. 339 U.S. 643, 647 (1950)). Thus, it is "presumptively not unreasonable" to require a defendant to litigate in a forum when the defendant "has created continuing obligations between himself and residents of the forum." Id. at 476 (internal quotation marks omitted).

6

Furthermore, the Agreement specifically stated that South Carolina law would govern any disputes arising from the contract.  Although a choice of law provision alone is not dispositive of a personal jurisdiction question, it does serve as evidence of a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there."  Id. at 482.

Moreover, CGD's assertion that it only provided the software applications it created pursuant to the Agreement by posting executable digital files on an Internet site or by delivery via a private courier service does not preclude a finding of personal jurisdiction.

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines. . . . So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Id. at 476 (internal quotation marks omitted).  Courts have explicitly found the exercise of personal jurisdiction proper based on "web sites in which individuals enter into contracts with defendants via the Internet and download, transmit or exchange files."  ESAB Group, Inc. v. Centricut, L.L.C., 34 F. Supp. 2d 323, 330 (D.S.C. 1999) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)).

The Fourth Circuit has held that jurisdiction over a non-resident defendant is proper "when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  ALS Scan v. Digital Serv. Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002).  CGD intentionally and specifically directed electronic activity into South Carolina for the purpose of

performing its obligations under the Agreement.  Therefore, based on the foregoing, CGD has sufficient minimum contacts with South Carolina to satisfy the first prong of the due process analysis.

### b.  Fair Play and Substantial Justice

Additionally, exercising personal jurisdiction over CGD must not "offend traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987) (internal quotation marks omitted).  In making this determination, "[a] court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Id.  Further, the court must consider "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" Id. (quoting World-Wide Volkswagen, 444 U.S. at 292).

Although it may be more burdensome for CGD to defend a suit in South Carolina than in Texas, CGD intentionally made the contacts with South Carolina sufficient to confer jurisdiction over it.  Further, as Gateway is a resident of this state, South Carolina has a strong interest in resolving this dispute. See Fallon Luminous Prods. Corp. v. Multi Media Elecs., Inc., 343 F. Supp. 2d 502, 508 (D.S.C. 2004) (noting South Carolina's compelling interest of discouraging injuries that occur within the state) (internal quotation marks omitted).  Finally, Gateway has a strong interest in litigating it its choice of forum.  "Unless the balance of equities is strongly in favor of the Defendant, a court should rarely disturb the Plaintiff's choice of forum." Scott v. Guardsmark Sec., 874 F. Supp. 117, 120 (D.S.C. 1995).  After consideration of the relevant factors, the court finds that exercising jurisdiction over the

8

defendant does not offend traditional notions of fair play and substantial justice. Therefore, based on the foregoing, CGD's motion to dismiss for lack of personal jurisdiction is denied.

### B. Motion to Dismiss for Improper Venue or, in the Alternative, Motion to Transfer Venue

Second, CGD moves to dismiss the case due to improper venue. To survive a motion to dismiss for improper venue, Gateway must make a prima facie showing of proper venue. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). Pursuant to 28 U.S.C. § 1391(a),

> a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be heard.

CGD asserts that no acts giving rise to this action occurred in South Carolina. However, a review of the facts reveals otherwise. All of the negotiations leading up to the execution of the Agreement took place in South Carolina and Texas via telephone and e-mail correspondence. (Pl.'s Mem. Opp'n Mot. Dismiss Improper Venue 1.) Pursuant to the Agreement, CGD's games and gaming system files were either downloaded in South Carolina or delivered to South Carolina. (Def.'s Mot. Dismiss Improper Venue ¶ 8.) Further, the design specifications for the games and gaming system were created in South Carolina by Gateway representatives, along with the testing and attempted implementation of the same. (Pl.'s Mem. Opp'n Mot. Dismiss Improper Venue 2-3.) In fact, Gateway performed all of its obligations pursuant to the Agreement in South Carolina. (Id. 3) Therefore, a substantial

part of the events giving rise to the claim occurred in South Carolina, and CGD's motion to dismiss for improper venue is denied.

In the alternative, CGD moves to transfer the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a) (2006). Section 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." Id. In a 1404(a) analysis, a plaintiff's choice of forum is given weight when the plaintiff's choice of forum has a substantial connection with the controversy. Milliken & Co. v. Fed. Trade Comm'n, 565 F. Supp. 511, 517 (D.S.C. 1983).

### 1. Convenience of the Parties and Witnesses

The first factor, the convenience of the parties and witnesses, favors neither Texas nor South Carolina. Numerous witnesses live in each state. Further, Gateway's principal place of business is South Carolina, and CGD's principal place of business is Texas. (Compl. ¶¶ 1-2.) With respect to the evidence in the case, each party has business records and other relevant evidence in each state. (Def.'s Mem. Supp. Mot. Dismiss Improper Venue 7-8; Pl.'s Mem. Opp'n Mot. Dismiss Improper Venue 6.) A transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other. DeLay & Daniels, Inc. v. Allen M. Campbell Co., Gen. Contractors, Inc., 71 F.R.D. 368, 372 (D.S.C. 1976).

A transfer that merely shifts the balance of convenience is especially inappropriate in the case at bar because South Carolina has a substantial connection to the controversy such that the plaintiff's choice of forum should be given weight.   <u>Milliken & Co.</u>, 565 F. Supp. at 517

CGD also argues that the Former Employees are key non-party witnesses residing in Texas, who cannot be compelled to testify in South Carolina.  (Def.'s Mem. Supp. Mot. Dismiss Improper Venue 8.)  However, key non-party witnesses also reside in South Carolina.  (Pl.'s Mem. Opp'n Mot. Dismiss Improper Venue 6.)  Furthermore, CGD alleges that the Former Employees are now employed by Gateway, in which case they would be subject to the direction and control of Gateway, rendering a compulsory process unnecessary. (Def.'s Mem. Supp. Mot. Dismiss Improper Venue 5.)  Even if this allegation proves to be false, CGD offers no evidence that the Former Employees would be unwilling to testify.

### 2.  In the Interests of Justice

There are numerous factors that the court may consider in weighing whether the interests of justice warrant a transfer, including "the ease of access to sources of proof, the availability of compulsory process, the costs and practical problems of litigation, and the state of the respective trial calenders" of the districts being considered.  <u>Fairchild Semiconductor Corp. v. Nintendo Co.</u>, 810 F. Supp. 173, 175 (D.S.C. 1992).  Further, the court must consider "public-interest factors of systemic integrity and fairness."  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 30 (1988).

CGD asserts that in the interest of justice this case should be heard in Texas because CGD filed the Texas action first.  However, this is a question more appropriately addressed under the doctrine of abstention.  Further, despite CGD's assertion that transfer will result in

consolidation with the Texas action, it is unclear how a transfer under § 1404(a) to a United States District Court in Texas would consolidate the instant case with the Texas action. In light of the absence of any other factors counseling in favor of transfer, CGD has not shown that the plaintiff's choice of forum should be disregarded. Based upon the foregoing, CGD's motion to transfer venue to the Eastern District of Texas is denied.

### C. Motion to Dismiss Pursuant to <u>Colorado River</u> or, in the Alternative, Motion to Stay Proceedings

Finally, CGD moves to dismiss pursuant to the <u>Colorado River</u> doctrine, or in the alternative, to stay proceedings. The <u>Colorado River</u> doctrine delineates when a federal court may abstain from hearing a case in deference to ongoing state proceedings. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) (internal quotation marks omitted). This is due to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." <u>Id.</u>

Despite the general rule, abstention is appropriate in certain limited circumstances. First, there must be parallel proceedings in state and federal court. If so, exceptional circumstances must exist to warrant abstention. In determining whether exceptional circumstances exist, the court may consider (1) whether any court has assumed jurisdiction over property, (2) "the inconvenience of the federal forum," (3) "the desirability of avoiding piecemeal litigation," and (4) "the order in which jurisdiction was obtained by the concurrent forums." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 15 (1983). These factors must be considered in light of "the heavy presumption favoring the exercise of

jurisdiction." New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1074 (4th Cir. 1991) (internal quotation marks omitted).  Thus, the exceptional circumstances test is a "stringent standard," and abstention is appropriate only with "the clearest of justifications."  Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289-90 (1988), superseded on other grounds by statute, Pub. L. No. 100-702, 102 Stat. 4642.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  New Beckley Mining Corp., 946 F.2d at 1073.  The issues in the instant case and the Texas action overlap to a certain degree.  The Texas action involves the same parties with the addition of the Former Employees.  (Compl. 1; Def.'s Mem. Supp. Mot. Dismiss Pursuant to Colorado River Ex. B (Pet. Tex. action 1).)   Furthermore, the declaratory judgment Gateway seeks in this case involves a central issue in the Texas action concerning Gateway's alleged hiring of the Former Employees.  (Compl. ¶¶ 19-22; Def.'s Mem. Supp. Mot. Dismiss Pursuant to Colorado River  Ex. B (Pet. Tex. action ¶¶ 60-63).) The Texas action, however, involves claims for tortious interference, conspiracy, and breach of fiduciary duty, which are not alleged in this case.  (Compl. 1-22; Def.'s Mem. Supp. Mot. Dismiss Colorado River Ex. B (Pet. Tex. action ¶ 2).)   Furthermore, whether CGD failed to timely complete its obligations and delivered defective products to Gateway are not at issue in the Texas action.  (Def.'s Mem. Supp. Mot. Dismiss Pursuant to Colorado River Ex. B (Pet. Tex. action).)  Therefore, the two suits are not parallel.

In addition, even if the suits were parallel, CGD cannot show that extraordinary circumstances warrant abstention.  CGD asserts that extraordinary circumstances exist because (1) most of the witnesses and evidence are located in Texas, (2) piecemeal litigation

will result if this case is not dismissed, and (3) there is no federal issue in this case.  As explained in section A, the potential witnesses and evidence in this case are found in both South Carolina and Texas.  Nothing suggests a disparity in the witnesses or evidence located in each state which would weigh in favor of abstention.

The remaining two assertions, that piecemeal litigation will result and that there is no federal issue in this case, are too general to justify abstention under Colorado River. Duplicitous suits will be an issue in every case in which abstention is an issue, and nothing in the instant case makes piecemeal litigation especially problematic.  See Colorado River, 424 U.S. at 819 (holding abstention appropriate in light of "clear federal policy" disfavoring piecemeal litigation over water rights).

Likewise, the sequence of filing of the Texas action and the instant action does not require abstention.  More important than when each case was filed is how much progress has been made in each suit.  See id., 424 U.S. at 806 (holding that abstention was appropriate even though the federal suit was filed first); New Beckley Mining Corp., 946 F.2d at 1074 (stating that "[t]he order in which the courts obtained jurisdiction matters little, since . . . the suits [were filed] in March and December of the same year").  The instant action was filed only twenty (20) days after the Texas action.  (Compl.; Def.'s Mem. Supp. Mot. Dismiss Pursuant to Colorado River Ex. B (Pet. Tex. Action).)   No evidence suggests that the state case has progressed to the point that this factor weighs heavily in favor of abstention.  Finally, the Supreme Court "never has intimated acceptance of [the] view that the decision of a party to spurn removal and bring a separate suit in federal court invariably warrants the stay or dismissal of the suit under the *Colorado River* doctrine."  Gulfstream Aerospace Corp., 485

14

U.S. at 290 (1988).  In light of the foregoing, CGD's motion to dismiss or stay proceedings pursuant to Colorado River is denied.

It is therefore

**ORDERED** that CGD's motion to dismiss for lack of jurisdiction, docket number 10, is denied.  It is further

**ORDERED** that CGD's motion to dismiss based on improper venue or to transfer, docket number 14, is denied.  It is further

**ORDERED** that CGD's motion to dismiss pursuant to Colorado River, docket number 15, is denied.

**IT IS SO ORDERED.**


                                              s/Henry M. Herlong, Jr.
                                              United States District Judge

Greenville, South Carolina
September 25, 2006